**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Honeywell International Inc.,<br><br>Plaintiff,<br><br>v.<br><br>BRK Brands, Inc.,<br><br>Defendant. | Case No.: 1:15−cv−08493<br><br>Honorable John Robert Blakey |

**DEFENDANT, BRK BRANDS, INC'S ANSWERS AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT**

Defendant, BRK Brands, Inc. ("BRK"), by its attorneys, answers as follows the Complaint of Honeywell International Inc. ("Honeywell"):

**PARTIES**

1. Honeywell is a Delaware corporation with its principal place of business in Morris Plains, New Jersey. Honeywell nationally markets and sells, among other things, residential and commercial security, fire detection, alarm, closed-circuit television, and building- automation systems under various brand names, including **First Alert Professional**.

**ANSWER:** BRK admits the first sentence, admits that Honeywell sells products using the **First Alert Professional** name, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 1.

2. BRK is a Delaware corporation with its principal place of business in Aurora, Illinois. BRK nationally markets and sells, among other things, residential and commercial security, fire detection, alarm, closed-circuit television, and building-automation systems under various brand names, including **First Alert**.

**ANSWER:** BRK admits the allegations of paragraph 2

## JURISDICTION AND VENUE

3. This is a civil action for claims arising under the trademark laws of the United States, 15 U.S.C. §§ 1051, *et seq*. ("Lanham Act"), and related claims arising under contract and the law of the State of Illinois.

**ANSWER:** BRK denies the allegations of paragraph 3 as conclusions of law.

4. This Court has subject-matter jurisdiction under the following statutes:

a. 15 U.S.C. § 1121 ("The district and territorial courts of the United States shall have original jurisdiction…of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.");

b. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.");

c. 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to…trademarks.");

d. 28 U.S.C. § 1338(b) ("The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the…trademark laws."); and

e. 28 U.S.C. § 1367 ("…in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**ANSWER:** BRK denies the allegations of paragraph 4 as conclusions of law.

5. BRK has its principal place of business in this District. A substantial part of the events or omissions giving rise to the claims occurred in this District. The Court has personal jurisdiction over BRK, and venue is proper under 28 U.S.C. § 1391.

**ANSWER:** BRK admits that its principal place of business is in this District. BRK does not challenge personal jurisdiction or venue, but denies any remaining allegation of paragraph 5.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### Background

6. First Alert Trust is the owner, registrant, and licensor of numerous valid and enforceable federal trademarks, including:

a. **FIRST ALERT**, US Reg. No. 1,584,470, covering "electronic home security and fire safety products, including automatic lighting and timing controls, switches and sensors, fire extinguishers, and smoke detectors sold individually;"

b. **FIRST ALERT**, US Reg. No. 1,073,510, covering, "electronic fire and smoke detectors;"

c. **FIRST ALERT PROFESSIONAL**, US Reg. No. 1,909,171, covering "home and business security systems comprising electrical, mechanical and electronic alarms, fire and smoke detectors, automatic lighting, appliance and timing controls, open and closed circuit monitors, switches and sensors, audio and visual controls, optic sensors and optical scanners;" and

d. **FIRST ALERT PROFESSIONAL SECURITY SYSTEM**, US Reg. No. 1,728,542, covering, "home and business security systems comprising electrical, mechanical and electronic alarms, fire and smoke detectors, automatic lighting, appliance and timing controls, open and closed circuit monitors, switches and sensors, audio and visual controls, optic sensors and optical scanners."

**ANSWER:** The allegations of paragraph 6 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 6.

**The License Agreement**

7. On July 31, 1992, First Alert Trust entered into a Trademarks, Technology, and Know-How License Agreement with THL-FA Operating Corp. ("THL-FA") and Pittway Corporation ("Pittway") ("the License Agreement").

**ANSWER:** BRK admits the allegations of paragraph 7.

8. Honeywell is the successor to all of Pittway's rights and obligations under the License Agreement. BRK is the successor to all of THL-FA's rights and obligations under the License Agreement. For ease of reference, the remaining allegations in this Complaint refer to the current parties to the License Agreement (Honeywell instead of Pittway, and BRK instead of THL-FA).

**ANSWER:** BRK admits the allegations of paragraph 8.

9. Under the License Agreement, Honeywell has "a royalty-free, world-wide, perpetual, irrevocable, exclusive right and license to use" the **First Alert Professional** and **First Alert Professional Security System** marks on and in connection with "Professional Products," defined as follows:

> **Professional Products.** The term "Professional Products" shall mean:
>
> (i) smoke detectors which are designed to be monitored by an alarm or building control system or which are designed to include a radio frequency transmitter or to work in conjunction with a communications panel;
>
> (ii) electro mechanical or electronic timers which are designed to be integrated into a building lighting control system or other building control system;
>
> (iii) passive infrared motion sensors which are designed to be integrated into a building lighting control system or other building control system;
>
> (iv) commercial or industrial duct detectors, waterflow detectors, beam detectors, sounders, horns, strobes or pull stations;
>
> (v) child safety or elder care products which are part of an alarm or monitoring system; and

(vi) controls, communications devices and peripheral devices (including, but not limited to, smoke detectors, motion sensors, electromechanical and electronic timers, audio and alarm activating devices, sound sensors,

(vii) vibration sensors, capacitance sensors, temperature sensors, waterflow detectors, identification cards, remote control stations, power supplies, cameras, monitors, switching devices, speakers, intercoms, amplifiers, mixers, locks and auxiliary indicators) used in wired or wireless professionally-installed burglar alarm, fire alarm, medical emergency alert, lighting control, access control, sound, closed circuit television or other building control and automation systems; as amended pursuant to Section 2.5 hereof.

License Agreement ¶ 1.11.

**ANSWER:** The allegations of paragraph 9 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 9.

10. Under the License Agreement, BRK has "a royalty-free, world-wide, perpetual, irrevocable, exclusive right and license to use" the **First Alert** mark on and in connection with "products other than Professional Products." License Agreement ¶ 2.2.2 (emphasis added).

**ANSWER:** The allegations of paragraph 10 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 10.

11. The License Agreement therefore prohibits BRK from using the **First Alert** mark on or in connection with Professional Products.

**ANSWER:** The allegations of paragraph 11 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 11.

12. Under the License Agreement, Honeywell has the power "to undertake any demand, suit or other action on account of any actual or suspected infringement or misappropriation of….the Trademarks," including the **First Alert** and **First Alert Professional** marks. License Agreement ¶ 5.1.

**ANSWER:** The allegations of paragraph 12 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 12.

13. Under the License Agreement, Honeywell has the right "to undertake any demand, suit or other action on account of any actual or suspected infringement of the Trademarks: with respect to [Honeywell], in connection with the Professional Products…" License Agreement ¶ 5.5.3. As the party prosecuting such "demand, suit or other action," Honeywell is "exclusively entitled to proceeds or recoveries resulting therefrom." License Agreement ¶ 5.5.6.

**ANSWER:** The allegations of paragraph 13 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 13.

14. Under the License Agreement, Honeywell has the "ability to enforce all rights of" First Alert Trust, subject to certain exceptions not applicable here. License Agreement ¶ 7.3.3. "Each Licensee acknowledge[d] and agree[d] that the other Licensee shall have the right to enforce all such rights of [First Alert Trust]." *Id.*

**ANSWER:** The allegations of paragraph 14 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 14.

15. Under the License Agreement, Honeywell and BRK each acknowledge as follows:

> breach of this Agreement would cause immediate and irreparable harm to the other parties for which money damages could not adequately compensate the other parties. Therefore, each party shall have the right to enforce this Agreement, not only by an action or actions for damages, but also by an action or actions for specific performance or injunctive or other equitable relief in order to enforce or prevent any violations of the terms or conditions of this Agreement, without proof of actual damages and without the posting of bond or other security

License Agreement ¶ 7.3.1.

**ANSWER:** The allegations of paragraph 15 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 15.

16. The License Agreement provides that "[e]ach Licensee…shall pay all costs, fees and expenses (including attorneys' fees) incurred by either of them based on, any claim… (ii) alleging facts which, if true, would constitute a breach by such Licensee of this Agreement." License Agreement ¶ 9.9.

**ANSWER:** The allegations of paragraph 16 purport to characterize terms of the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 16.

**The Settlement Agreement**

17. In 2005, Honeywell filed a civil complaint alleging that BRK was using or planned to use the **First Alert** mark on certain Professional Products, namely smoke and carbon monoxide detectors with radio frequency transmitters ("RF Smoke / CO Products").

**ANSWER:** BRK admits that in 2005 Honeywell filed a civil complaint making certain allegations against BRK. Paragraph 17 purports to characterize allegations of the complaint and BRK denies the characterizations to the extent they are inconsistent with what was alleged in the complaint. BRK denies any remaining allegation of paragraph 17.

18. Honeywell's claims in the 2005 lawsuit were resolved by a settlement agreement that became effective on June 15, 2005 ("the Settlement Agreement").

**ANSWER:** BRK admits that the 2005 Lawsuit was dismissed with prejudice and resolved by the Settlement Agreement.

19. Pursuant to the Settlement Agreement, Honeywell dismissed the 2005 lawsuit and Consented to BRK's manufacture of RF Smoke / CO Products, as follows:

> Honeywell agrees to voluntarily and promptly dismiss the Litigation with prejudice…and agrees to take no further legal action with regard to and consents to BRK's manufacture, importing, marketing, offering for sale or sale of the Current

> RF Smoke / CO Products or any change in SKU to the Current RF Smoke / CO Products, any addition of SKU to the Current RF Smoke / CO Products, or modification of the Current RF Smoke / CO Products, so long as said change, addition or modification does not render said product one that is intended to or designed to be professionally installed and professionally monitored; all in consideration of BRK's performance under this Agreement.

Settlement Agreement ¶ 1.[1]

**ANSWER:** The allegations of paragraph 19 purport to characterize terms of the Settlement Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation of paragraph 19.

20. As part of the consideration for the Settlement Agreement, BRK agreed that it would forever refrain from using the **First Alert** trademark in connection with "intrusion products":

> BRK will not use the 'First Alert' trademark or name in connection with 'intrusion' products, which are the following:
>
> - motion detectors / sensors, utilized as a standalone device or component of another device, that create or generate an alarm signal or sound upon activation;
> - door and window sensors;
> - glass break detectors / sensors;
> - vibration detectors / sensors;
> - automatic lighting sensors that create or generate an alarm signal or sound upon activation;
> - asset protection sensors designed to detect movement of assets which provide notification to a system for the purposes of indicating an intrusion situation;
> - shock sensors; and
> - sounders or strobes that are used as an intrusion alarm notification.

[1] SKU stands for "stock-keeping unit," which denotes an alpha-numeric identification code that allows a particular product to be tracked for inventory purposes.

Settlement Agreement ¶ 3(a) (hereinafter, "Intrusion Products"). The parties acknowledged "for the avoidance of doubt" that the prohibition on BRK's use of the First Alert mark in connection with Intrusion Products "does not expand either party's rights under the 1992 License Agreement to use the 'First Alert' or 'First Alert Professional' trademarks." Settlement Agreement ¶ 3(c).

**ANSWER:** The allegations of paragraph 20 purport to characterize terms of the Settlement Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation of paragraph 20.

21. In the Settlement Agreement, BRK also agreed that it would print the following disclaimer in all of its product and promotional material related to RF Smoke / CO Products:

> This product is intended for non-professional do it yourself installation. If you would like information about a professionally installed and monitored system, please contact First Alert Professional at 1-800-921-6025. First Alert Professional is not affiliated with BRK Brands, Inc.

Settlement Agreement ¶ 4.

**ANSWER:** The allegations of paragraph 21 purport to characterize terms of the Settlement Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation of paragraph 21.

22. In the Settlement Agreement, BRK further agreed to provide Honeywell "information on all new products in development, manufacture, and to be marketed using the 'First Alert'…trademarks or names and to give [Honeywell] an opportunity to comment on and/or state reasonable objections to said plans which may result in consumer confusion or undermine either party's business interests." Settlement Agreement ¶ 7.

**ANSWER:** The allegations of paragraph 22 purport to characterize terms of the Settlement Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation of paragraph 22.

## BRK Violates the License Agreement and the Settlement Agreement

23. BRK is using—or plans to use—the **First Alert** mark on or in connection with various Professional Products and Intrusion Products. Honeywell is not familiar with all of BRK's products or plans. By way of example, and without limitation, BRK is using or plans to use the **First Alert mark** on or in connection with the following existing or planned products, in violation

of Honeywell's exclusive trademark rights under the License Agreement and the Settlement Agreement:

**ANSWER:** BRK admits that it is using and plans to use the **First Alert** mark on or in connection with certain products, and denies any violation of Honeywell's trademark rights, the License Agreement or the Settlement Agreement. BRK lacks knowledge sufficient to form a belief as to the truth of the second sentence of paragraph 23. BRK denies any remaining allegation of paragraph 23.

**A. First Alert Onelink Products.**

24. BRK's Product Catalog for Distributors ("BRK Distributor Catalog") states as follows:

> In 2015, First Alert will roll out the new Onelink™ suite of connected products that cover categories including home environment monitoring, fitness, safety and security….Products in the new First Alert Onelink™ collection are designed to seamlessly integrate with one another to create a comprehensive smart home that can be controlled and monitored from virtually anywhere by a user's mobile device.

**ANSWER:** The allegations of paragraph 24 purport to characterize statements within a BRK Distributor Catalog and BRK denies the allegations to the extent they are inconsistent with the statements within the BRK Distributor Catalog. BRK denies any remaining allegation of paragraph 24.

**i. First Alert Onelink Thermostat.**

25. Among BRK's new products for 2015 is the First Alert THERM-500 Onelink Wi-Fi Touchscreen Smart Thermostat ("First Alert Onelink Thermostat"):




**ANSWER:** BRK admits that the First Alert Onelink Thermostat is one of its products. BRK lacks knowledge or information sufficient to form a belief as to the truth of any allegation associated with the picture depicted within paragraph 25. BRK denies any remaining allegation of paragraph 25.

26. The First Alert Onelink Thermostat is designed to automate various building control systems, including heating, cooling, humidification, dehumidification, and indoor/outdoor air circulation.

**ANSWER:** BRK denies the allegations of paragraph 26.

27. According to BRK's marketing materials, the First Alert Onelink Thermostat contains an electronic timer so that its "Time Period Scheduler" can "automatically change [] the temperature mode for up to four periods per day. This allows for comfortable temperatures for sleeping, waking, and daytime, plus an energy savings mode for when no one is home."

**ANSWER:** The allegations of paragraph 27 purport to characterize terms of "BRK's marketing materials" and BRK denies any allegation that is inconsistent with the terms of its marketing materials. BRK denies any remaining allegation of paragraph 27.

28. The First Alert Onelink Thermostat is Internet-enabled so that the device can communicate with the user by sending email alerts regarding indoor temperatures and by allowing the user remotely to monitor and adjust climate and other settings.

**ANSWER:** BRK admits only that the First Alert Onelink Thermostat is internet-enabled and can communicate with residential users. BRK denies any remaining allegation of paragraph 28.

29. The First Alert Onelink Thermostat is or can be professionally installed. Among other things, the installation manual for the product states that the user must "determine what your existing wiring and equipment situation is. If you are unsure of what type of system you have, ***you may need to seek professional support***." First Alert Onelink Thermostat Manual at 4 (emphasis added).

**ANSWER:** The allegations of paragraph 29 purport to characterize BRK's "installation manual" and BRK denies any allegation inconsistent with the terms of its installation manual. BRK denies any remaining allegation of paragraph 29.

30. The First Alert Onelink Thermostat is a Professional Product, as defined in the License Agreement. Among other things, it is an "electro mechanical or electronic timer [] which [is] designed to be integrated into a…building control system." License Agreement ¶ 1.11. Independent of that, it is a "control[], communications device[] and peripheral device[] (including, but not limited to…electromechanical and electronic timers,…temperature sensors,…) used in wired or wireless professionally-installed….building control and automation systems…" License Agreement ¶ 1.11 (emphasis added).

**ANSWER:** BRK denies that the First Alert Onelink Thermostat is a Professional Product. The allegations of paragraph 30 purport to characterize terms of the License Agreement and BRK denies any allegation inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 30.

31. BRK failed to provide Honeywell with information about its plans to use the **First Alert** mark on or in connection with the First Alert Onelink Thermostat and to give Honeywell an opportunity to comment on or state reasonable objections to said plans. Settlement Agreement ¶ 7.

**ANSWER:** BRK denies the allegations of paragraph 31.

32. By using the **First Alert** trademark on or in connection with the First Alert Onelink Thermostat, BRK exceeds the license granted to it in the License Agreement and otherwise violates the terms of the License Agreement.

**ANSWER:** BRK denies the allegations of paragraph 32.

33. Honeywell nationally markets building automation and control systems, including thermostats. Some of Honeywell's competing products are marketed and sold using the **First Alert Professional** mark.

**<u>ANSWER:</u>** The allegations of paragraph 33 purport to characterize BRK's written marketing materials and BRK denies the allegations to the extent they are inconsistent with such marketing materials. BRK denies any remaining allegation of paragraph 33.

**ii. The First Alert Onelink Tracker.**

34. Among BRK's new products for 2015 is the First Alert Onelink Tracker:




**<u>ANSWER:</u>** BRK admits that one of its products is the First Alert Onelink Tracker. BRK denies any remaining allegations of paragraph 34.

35. According to the BRK Distributor Catalog, the First Alert Onelink Tracker can "[h]help keep your valuable tools and personal items safe and within reach…Bluetooth/iBeacon technology means that when tagged items are in motion or out of range, your Onelink Tracker will send instant notifications, alarms and offer a 911-call option from your connected smartphone or tablet…."

**<u>ANSWER:</u>** The allegations of paragraph 35 purport to characterize statements within BRK's Distributor Catalog and BRK denies any allegation that is inconsistent with the statements within its Distributor Catalog. BRK denies any remaining allegation of paragraph 35.

36. The First Alert Onelink Tracker is an "Intrusion Product" as that term is defined in the Settlement Agreement. Specifically, but without limitation, the Settlement Agreement provides that BRK will not "use the 'First Alert' trademark or name in connection with Intrusion Products, which include "asset protection sensors designed to detect movement of assets which provide

notification to a system for the purposes of indicating an intrusion situation." Settlement Agreement ¶ 3.

**ANSWER:** The allegations of paragraph 36 purport to characterize terms of the Settlement Agreement and BRK denies any allegation inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation in paragraph 36.

37. BRK failed to provide Honeywell with information about its plans to use the **First Alert** mark on or in connection with the First Alert Onelink Tracker and to give Honeywell an opportunity to comment on or state reasonable objection to said plans. Settlement Agreement ¶ 7.

**ANSWER:** BRK denies the allegations of paragraph 37.

38. By using the **First Alert** trademark on or in connection with the First Alert Onelink Tracker, BRK exceeds the license granted to it in the License Agreement and otherwise violates the terms of the License Agreement.

**ANSWER:** BRK denies the allegations of paragraph 38.

39. By using the **First Alert** trademark on or in connection with the First Alert Onelink Tracker, BRK violates the terms of the Settlement Agreement.

**ANSWER:** BRK denies the allegations of paragraph 39.

40. Honeywell nationally markets various asset protection systems that are designed to detect movement of an asset and to send a notification to a system for purposes of indicating an intrusion situation. Some of Honeywell's competing products are marketed and sold using the **First Alert Professional** mark.

**ANSWER:** The allegations of paragraph 40 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK denies any remaining allegation of paragraph 40.

**B. First Alert Surveillance Systems and Cameras.**

41. BRK nationally markets and sells various audio/visual surveillance systems and related cameras under the **First Alert** mark (collectively, "the First Alert Surveillance Systems"), including the following:

**<u>ANSWER:</u>** The allegations of paragraph 41purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK admits that it sells audio/visual surveillance systems and related cameras. BRK denies any remaining allegation of paragraph 41.

**i. First Alert SmartBridge.**

42. BRK markets and sells First Alert SmartBridge DVR Security Systems ("First Alert SmartBridge"), a series of wired, closed-circuit television systems and related peripherals, including cameras:




**<u>ANSWER:</u>** The allegations of paragraph 42 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK admits that it sells the First Alert SmartBridge. BRK denies any remaining allegation of paragraph 42.

BRK admits that it markets and sells the First Alert SmartBridge. BRK lacks knowledge or information sufficient to form a belief as to the truth of any allegation relating to the picture depicted in paragraph 42. BRK denies any other allegation of paragraph 42.

43. According to the First Alert SmartBridge Manual, these products come equipped with "[m]otion detection" that can "trigger recordings, buzzer alarms, [and] an alarm output control signal…." First Alert SmartBridge Manual at 19.

**ANSWER:** The allegations of paragraph 43 purport to characterize statements within the First Alert SmartBridge Manual and BRK denies any allegation inconsistent with the statements within the First Alert SmartBridge Manual. BRK denies any remaining allegation of paragraph 43.

44. According to the First Alert SmartBridge Manual, the system has an "Alarm Output" that allows it to send an output control signal to a connected alarm system device, and thereby trigger an alarm.

**ANSWER:** The allegations of paragraph 44 purport to characterize statements within the First Alert SmartBridge Manual and BRK denies any allegation inconsistent with the statements within the First Alert SmartBridge Manual. BRK denies any remaining allegation of paragraph 44.

**ii. First Alert 8-Channel.**

45. BRK markets and sells the First Alert 8-Channel and 8-Camera Wired DVR Security System (DC8810-420) ("First Alert 8-Channel"), a wired closed-circuit television system and related peripherals, including cameras:

**ANSWER:** The allegations of paragraph 45 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK admits that it sells the First Alert 8-Channel and 8-Camera. BRK denies any remaining allegation of paragraph 45.

46. According to the First Alert 8-Channel Manual, these products come equipped with "motion detection" and "alarm control suitable for applications such as high-end residential - new or remodel, light commercial, small business/retail, small warehouse or small grocery." First Alert 8-Channel Manual at 3.

**ANSWER:** The allegations of paragraph 46 purport to characterize statements within the First Alert 8-Channel Manual and BRK denies any allegation inconsistent with the statements of the First Alert 8-Channel Manual and any remaining allegation of paragraph 46.

47. According to the First Alert 8-Channel Manual, the system is capable of accepting alarm inputs such as "devices or switches that activate when a door, window, cabinet etc. is opened or accessed." First Alert 8-Channel Manual at 23.

**ANSWER:** The allegations of paragraph 47 purport to characterize statements within the First Alert 8-Channel Manual and BRK denies any allegation inconsistent with the statements of the First Alert 8-Channel Manual and any remaining allegation of paragraph 47.

48. According to the First Alert 8-Channel Manual, the system is capable of generating alarm outputs "to activate an external device such as a horn or light" or to send an email when an alarm is triggered. First Alert 8-Channel Manual at 22 – 23.

**ANSWER:** The allegations of paragraph 48 purport to characterize statements within the First Alert 8-Channel Manual and BRK denies any allegation inconsistent with the statements of the First Alert 8-Channel Manual and any remaining allegation of paragraph 48.

**iii. First Alert 4-Channel.**

49. BRK markets and sells the First Alert 4-Channel and 4-Camera Wired DVR Security System (DC4405-420) ("First Alert 4-Channel"), a wired closed-circuit television system and related peripherals, including cameras:




**ANSWER:** The allegations of paragraph 49 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing

materials. BRK admits that it sells the First Alert 4-Channel and 4-Camera. BRK denies any remaining allegation of paragraph 49.

50. According to the First Alert 4-Channel Manual, these products come equipped with "motion detection" and "alarm control suitable for applications such as high-end residential - new or remodel, light commercial, small business/retail, small warehouse or small grocery." First Alert 4-Channel Manual at 3.

**ANSWER:** The allegations of paragraph 50 purport to characterize statements of BRK's First Alert 4-Channel Manual and BRK denies any allegation inconsistent with the statements of its First Alert 4-Channel Manual. BRK denies any other allegation of paragraph 50.

51. According to the First Alert 4-Channel Manual, the system is capable of accepting alarm inputs such as "devices or switches that activate when a door, window, cabinet etc. is opened or accessed." First Alert 4-Channel Manual at 23.

**ANSWER:** The allegations of paragraph 51 purport to characterize statements of BRK's First Alert 4-Channel Manual and BRK denies any allegation inconsistent with the statements of its First Alert 4-Channel Manual. BRK denies any other allegation of paragraph 51.

52. According to the First Alert 4-Channel Manual, the system is capable of generating alarm outputs "to activate an external device such as a horn or light" or to send an email when an alarm is triggered. First Alert 4-Channel Manual at 23.

**ANSWER:** The allegations of paragraph 52 purport to characterize statements of BRK's First Alert 4-Channel Manual and BRK denies any allegation inconsistent with the statements of its First Alert 4-Channel Manual. BRK denies any other allegation of paragraph 52.

### iv. First Alert Wireless System.

53. BRK markets and sells the First Alert Digital Wireless Recording System with 7 inch LCD Display and Two Digital Cameras (DWS-472) and the First Alert Digital Wireless Recording System with 7 inch LCD Display and One Digital Camera (DWS-471) ("First Alert Wireless System"), a wireless closed-circuit television system and related peripherals, including cameras:




**ANSWER:** The allegations of paragraph 53 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK admits that it sells the First Alert Digital Wireless Recording System. BRK denies any remaining allegation of paragraph 53.

54. According to the First Alert Wireless Manual, these products come equipped with motion detection. "When motion is detected by a camera, then a buzzer sound will be triggered by the monitor." First Alert Wireless System Manual at 23.

**ANSWER:** The allegations of paragraph 54 purport to characterize statements of the First Alert Wireless Manual and BRK denies any allegation inconsistent with the statements of the First Alert Wireless Manual. BRK denies any remaining allegation of paragraph 54.

**v. First Alert Wi-Fi Camera.**

55. BRK markets and sells the First Alert High Definition Wi-Fi Indoor Security Camera (DWIP-720) ("First Alert Wi-Fi Camera"), a wireless closed-circuit television system and related peripherals, including cameras:



**ANSWER:** The allegations of paragraph 55 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK admits that it sells the First Alert High Definition Wi-Fi Indoor Security Camera. BRK denies any remaining allegation of paragraph 55.

56. According to the First Alert Wi-Fi Camera Manual, these products come equipped with motion detection. *See* First Alert Wi-Fi Manual at 3. "The system can notify you when it detects motion from any camera by sending you an email alert." First Alert Wi-Fi Camera Manual at 11.

**ANSWER:** The allegations of paragraph 56 purport to characterize statements of the First Alert Wi-Fi Camera Manual and BRK denies any allegations inconsistent with the statements of the First Alert Wi-Fi Camera Manual. BRK denies any remaining allegation of paragraph 56.

57. According to the First Alert Wi-Fi Camera Manual, the system is capable of accepting alarm inputs, such as "switches that activate when a door, window, cabinet etc. is opened or accessed." First Alert Wi-Fi Camera Manual at 13.

**ANSWER:** The allegations of paragraph 57 purport to characterize statements of the First Alert Wi-Fi Camera Manual and BRK denies any allegation inconsistent with the statements of the First Alert Wi-Fi Camera Manual. BRK denies any remaining allegation of paragraph 57.

58. According to the First Alert Wi-Fi Camera Manual, the system is capable of generating alarm outputs "to activate an external device such as a horn or LED or relay after an alarm is triggered." First Alert Wi-Fi Camera Manual at 13.

**ANSWER:** The allegations of paragraph 58 purport to characterize statements of the First Alert Wi-Fi Camera Manual and BRK denies any allegations inconsistent with the statements of the First Alert Wi-Fi Camera Manual. BRK denies any remaining allegation of paragraph 58.

### vi. BRK's Use of the First Alert Mark in Connection With the First Alert Surveillance Systems Violates the License Agreement and the Settlement Agreement.

59. The First Alert Surveillance Systems referenced at paragraphs 57 to 82 are or can be professionally installed. Among other things, all of the First Alert Surveillance Systems manuals note that BRK is "committed to serving our customers, ***from the professionals who install our products***, to the families who count on them." (emphasis added). In addition, BRK's marketing claims that choosing the First Alert 360 Camera System can "[r]educe install time by up to 50% per job – improves installer efficiency for more billable hours."

**ANSWER:** The allegations of paragraph 59 purport to characterize BRK's product manuals and BRK denies the allegations to the extent they are inconsistent with the terms of the product manuals. BRK denies any remaining allegation of paragraph 59.

60. The First Alert Surveillance Systems are "Professional Products" as that term is defined in the License Agreement. Among other things, they are "controls, communications devices and peripheral devices (including, but not limited to…motion sensors,…audio and alarm activating devices,…cameras, monitors…) used in wired or wireless professionally-installed burglar alarm,…closed circuit television or other building control and automation systems…." License Agreement ¶ 1.11.

**ANSWER:** The allegations of paragraphs 60 purport to characterize terms of the License Agreement and BRK denies any allegation inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 60.

61. The First Alert Surveillance Systems are Intrusion Products, as defined in the Settlement Agreement. Among other things, they are "motion detectors / sensors, utilized as a standalone device or component of another device, that create or generate an alarm signal or sound upon activation," and they are "sounders…that are used as an intrusion alarm notification." Settlement Agreement ¶ 3(a).



LEGAL\28388496\1

**ANSWER:** The allegations of paragraphs 61 purport to characterize terms of the Settlement Agreement and BRK denies any allegation inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation of paragraph 61.

62. BRK failed to provide Honeywell with information about its plans to use the **First Alert** mark on or in connection with the First Alert Surveillance Systems and to give Honeywell an opportunity to comment on or state reasonable objections to said plans. Settlement Agreement ¶ 7.

**ANSWER:** BRK denies the allegations of paragraph 62.

63. By using the **First Alert** trademark on or in connection with the First Alert Surveillance Systems, BRK exceeds the license granted to it in the License Agreement and otherwise violates the terms of the License Agreement.

**ANSWER:** BRK denies the allegations of paragraph 63.

64. By using the **First Alert** trademark on or in connection with the First Alert Surveillance Systems, BRK violates the terms of the Settlement Agreement.

**ANSWER:** BRK denies the allegations of paragraph 64.

65. Honeywell nationally markets various surveillance and security systems that are similar to or otherwise compete with the First Alert Surveillance Systems, including surveillance cameras and motion sensors that can trigger alarms. Some of Honeywell's competing products are marketed and sold using the **First Alert Professional** mark.

**ANSWER:** BRK lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 65.

**C. First Alert Iris Smoke Alarm System.**

66. BRK markets and sells several First Alert branded smoke alarms for use with the Iris by Lowes system, including the First Alert Smoke & CO Detector ("COMBO") and First Alert Smoke Detector ("ZSMOKE") (collectively, "the First Alert Iris Smoke Alarms").

**ANSWER:** The allegations of paragraph 66 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing

materials. BRK admits that it sells what Plaintiff's Amended Complaint refers to as COMBO and ZSMOKE to Lowe's. BRK denies any remaining allegations of paragraph 66.

67. The Iris by Lowes system is a collection of components that are compatible with a communications hub through which the user can control and monitor the various components of the system, including the First Alert Iris Smoke Alarms.

**ANSWER:** The allegations of paragraph 67 purport to characterize Lowes' marketing materials and products and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials or the products. BRK admits that it sells what Plaintiff's Amended Complaint refers to as COMBO and ZSMOKE to Lowe's. BRK denies the remaining allegations of paragraph 67.

68. With BRK's knowledge and approval, Lowes advertises and sells both professional installation and professional monitoring of the Iris by Lowes system, including the First Alert Iris Smoke Alarms.

**ANSWER:** BRK denies the allegations of paragraph 68.

69. The First Alert Iris Smoke Alarms are "controls, communications devices and peripheral devices (including, but not limited to, smoke detectors…) used in wired or wireless professionally-installed burglar alarm, fire alarm, medical emergency alert, lighting control, access control, sound, closed circuit television or other building control and automation systems…" License Agreement ¶ 1.11.

**ANSWER:** The allegations of paragraph 69 purport to characterize the terms of the License Agreement and BRK denies any allegation inconsistent with the terms of the License Agreement. BRK denies any remaining allegations of paragraph 69.

70. The First Alert Iris Smoke Alarms are "intended to or designed to be professionally installed and professionally monitored." Settlement Agreement ¶ 1.

**ANSWER:** The allegations of paragraph 70 purport to characterize the terms of the License Agreement and BRK denies any allegation inconsistent with the terms of the License Agreement. BRK denies any remaining allegations of paragraph 70.

71. BRK failed to provide Honeywell with information about its plans to use the **First Alert** mark on or in connection with the First Alert Iris Smoke Alarms and to give Honeywell an opportunity to comment on or state reasonable objections to said plans. Settlement Agreement ¶ 7.

**ANSWER:** BRK denies the allegations of paragraph 71.

72. By using the **First Alert** trademark on or in connection with the First Alert Iris Smoke Alarms, BRK exceeds the license granted to it in the License Agreement and otherwise violates the terms of the License Agreement.

**ANSWER:** BRK denies the allegations of paragraph 72.

73. By using the **First Alert** trademark on or in connection with the First Alert Iris Smoke Alarms, BRK violates the terms of the Settlement Agreement.

**ANSWER:** BRK denies the allegations of paragraph 73.

74. Honeywell nationally markets various asset protection systems that are designed to detect smoke and to be professionally installed and professionally monitored. Some of Honeywell's competing products are marketed and sold using the **First Alert Professional mark**.

**ANSWER:** BRK lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 74.

**D. Failure to Label RF Smoke / CO Products as Required by the Settlement Agreement.**

75. BRK nationally markets and sells various RF Smoke / CO Products.

**ANSWER:** BRK admits that it sells various smoke and CO alarm products some of which include radio frequency. The allegations of paragraph 75 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK denies any remaining allegation of paragraph 75.

76. Under the Settlement Agreement, BRK is required to publish an agreed disclaimer in all product and promotional materials relating to the RF Smoke / CO Products, as alleged above.

**ANSWER:** The allegations of paragraph 76 purport to characterize terms of the Settlement Agreement and BRK denies any allegation inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation of paragraph 76.

77. At various points since BRK executed the Settlement Agreement, BRK has sold RF Smoke / CO Products and has published marketing and other product materials related to its RF Smoke / CO Products without including the required disclaimer.

**ANSWER:** The allegations of paragraph 77 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK denies any remaining allegation of paragraph 77.

78. BRK has violated the terms of the Settlement Agreement.

**ANSWER:** BRK denies the allegations of paragraph 78.

**BRK Knowingly Violates Honeywell's Contractual and Trademark Rights**

79. The **First Alert** trademark and Honeywell's licensed **First Alert Professional** trademark are similar in appearance, sound, connotation, and overall commercial impression.

**ANSWER:** BRK denies the allegations of paragraph 79.

80. As discussed above, the goods and services in connection with which BRK uses the **First Alert** trademark are similar to or compete with goods and services that Honeywell markets and sells using the **First Alert Professional** trademark.

**ANSWER:** The allegations of paragraph 80 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK denies any remaining allegation of paragraph 80.

81. BRK sells its competing products under the **First Alert** trademark in the same markets and geographic regions as Honeywell sells its products under the **First Alert Professional** trademark.

**ANSWER:** BRK lacks knowledge to or information sufficient to form a belief about the truth of the allegations of paragraph 81. By way of further answer, the allegations of paragraph 81 purport to characterize BRK's marketing materials and BRK denies the allegations to the extent they are inconsistent with the terms of the marketing materials. BRK denies any remaining allegation of paragraph 81.

82. The classes of installers, customers, and end-users for Honeywell surveillance and security products, thermostats, and smoke detectors overlaps with the likely classes of installers, customers, and end-users for BRK's competing products.

**ANSWER:** BRK lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 82. Otherwise, BRK denies the allegations of paragraph 82.

83. Neither Honeywell nor First Alert Trust has ever authorized BRK to use the **First Alert** trademark or any variant thereof on or in connection with Professional Products or Intrusion Products. To the contrary, Honeywell has previously enforced its rights by suing BRK for using the First Alert mark on or in connection with Professional Products, and Honeywell has otherwise demanded that BRK cease using the **First Alert** mark on or in connection with Professional Products.

**ANSWER:** BRK admits that Honeywell once sued BRK prior to this instant case and denies the remainder of the allegations of paragraph 83.

84. BRK has failed and refused to cease using the **First Alert** mark on or in connection with Professional Products.

**ANSWER:** BRK denies that it uses the **First Alert** mark on or in connection with its products in violation of the License or Settlement Agreements and denies any remaining allegation of paragraph 84.

85. BRK's use of the **First Alert** mark on Professional Products and Intrusion Products is intended to create, and will create, a likelihood of confusion, deception, and mistake with regard to whether Honeywell manufactures, produces, authorizes, sponsors, approves, endorses, or is otherwise affiliated with BRK's competing products.

**ANSWER:** BRK denies the allegations of paragraph 85.

86. As a result of the License Agreement, the prior litigation, and the Settlement Agreement, BRK has long had actual notice that Honeywell has the exclusive right to use the **First Alert Professional** mark on or in connection with Professional Products and Intrusion Products, and that BRK has no right to use the **First Alert** mark on or in connection with Professional Products or Intrusion Products.

**ANSWER:** BRK denies the allegations of paragraph 86.

87. BRK is thus willfully and in bad faith infringing upon Honeywell's exclusive right to use the **First Alert Professional** mark in connection with Professional Products and Intrusion Products.

**ANSWER:** BRK denies the allegations of paragraph 87.

88. BRK is thereby exploiting the goodwill Honeywell and First Alert Trust have created in the **First Alert Professional** mark.

**ANSWER:** BRK denies the allegations of paragraph 88.

89. BRK's conduct constitutes willful infringement of and encroachment upon Honeywell's exclusive trademark rights under the License Agreement and under the Settlement Agreement.

**ANSWER:** BRK denies the allegations of paragraph 89.

## CAUSES OF ACTION

### Count I: Breach of Contract (License Agreement)

90. Honeywell incorporates the foregoing factual allegations by reference.

**ANSWER:** BRK incorporates the foregoing answers by reference.

91. The License Agreement is a binding contract to which both Honeywell and BRK are parties.

**ANSWER:** BRK admits that the License Agreement is a contract to which both Honeywell and BRK are parties. The allegations of paragraph 91 purport to characterize the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 91.

92. Honeywell has all requisite authority to bring any action to vindicate its own rights or First Alert Trust's rights under the License Agreement.

**ANSWER:** The allegations of paragraph 92 purport to characterize the License Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 92.

93. BRK has breached the License Agreement by, among other things, using the **First Alert** mark on and in connection with Professional Products and Intrusion Products, in violation of License Agreement ¶¶ 1.11 and 2.1.2, as amended by the Settlement Agreement ¶ 3.

**ANSWER:** BRK denies the allegations of paragraph 93.

94. As a direct and proximate result of these breaches, BRK has profited and Honeywell, in its capacity as exclusive licensee and standing in the shoes of First Alert Trust, has suffered and will suffer damages.

**ANSWER:** BRK denies the allegations of paragraph 94.

95. As a direct and proximate result of BRK's conduct, Honeywell, in its capacity as licensee and standing in the shoes of First Alert Trust, has been and will continue to be substantially and irreparably harmed, including by damage to the goodwill associated with the **First Alert Professional** mark.

**ANSWER:** BRK denies the allegations of paragraph 95.

96. Unless preliminarily and permanently enjoined by the Court, BRK will continue to use and infringe the marks in question. This threat of future injury requires injunctive relief to prevent BRK's continued use of the **First Alert** mark on and in connection with Professional Products or Intrusion Products, and an order of specific performance by BRK of all material terms of the License Agreement and of the Settlement Agreement.

**ANSWER:** BRK denies the allegations of paragraph 96.

**Count II: Breach of Contract (Settlement Agreement)**

97. Honeywell incorporates the foregoing factual allegations by reference.

**ANSWER:** BRK incorporates its foregoing answers by reference.

98. The Settlement Agreement is a binding contract to which both Honeywell and BRK are parties.

**ANSWER:** BRK admits that the Settlement Agreement is a contract to which Honeywell and BRK are parties. The allegations of paragraph 98 purport to characterize the Settlement Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation of paragraph 98.

99. Honeywell has all requisite authority to bring any action to vindicate its own rights or First Alert Trust's rights under the Settlement Agreement.

**ANSWER:** The allegations of paragraph 99 purport to characterize the Settlement Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the Settlement Agreement. BRK denies any remaining allegation of paragraph 99.

100. BRK has breached the Settlement Agreement by, among other things, using the **First Alert** mark on and in connection with Intrusion Products and failing at various points from the date of the Settlement Agreement to publish the required disclaimer in connection with the marketing of RF Smoke / CO Products. *See* Settlement Agreement ¶¶ 1 – 4.

**ANSWER:** BRK denies the allegations of paragraph 100.

101. As a direct and proximate result of these breaches, BRK has profited and Honeywell, in its capacity as licensee and standing in the shoes of First Alert Trust, has suffered and will suffer damages.

**ANSWER:** BRK denies the allegations of paragraph 101.

102. As a direct and proximate result of BRK's conduct, Honeywell, in its capacity as licensee and standing in the shoes of First Alert Trust, has been and will continue to be substantially and irreparably harmed, including by damage to the goodwill associated with the **First Alert Professional** mark.

**ANSWER:** BRK denies the allegations of paragraph 102.

103. Unless preliminarily and permanently enjoined by the Court, BRK will continue to use and infringe the marks in question. This threat of future injury requires injunctive relief to prevent BRK's continued use of the **First Alert** mark on and in connection with Professional

Products or Intrusion Products, and an order of specific performance by BRK of all material terms of the License Agreement and of the Settlement Agreement.

**ANSWER:** BRK denies the allegations of paragraph 103.

**Count III: Section 43 of the Lanham Act**

104. Honeywell incorporates the foregoing factual allegations by reference.

**ANSWER:** BRK incorporates its foregoing answers by reference.

105. First Alert Trust owns the **First Alert** and **First Alert Professional** marks.

**ANSWER:** BRK admits the allegations of 105.

106. In the License Agreement, First Alert Trust granted BRK a limited license to use the **First Alert** mark on and in connection with products except for Professional Products and Intrusion Products.

**ANSWER:** The allegations of paragraph 106 purport to characterize terms of the License Agreement and BRK denies any allegation inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 106.

107. Honeywell has the exclusive right to use the **First Alert Professional** mark on and in connection with Professional Products and Intrusion Products.

**ANSWER:** BRK denies the allegations of paragraph 107.

108. Under the License Agreement, Honeywell has the right to bring claims to redress and ameliorate injuries both to itself and to First Alert Trust.

**ANSWER:** The allegations of paragraph 108 purport to characterize terms of the License Agreement and BRK denies any allegation inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 108.

109. BRK has, without the consent of First Alert Trust or Honeywell, in connection with goods or services; or containers for goods, used in commerce the **First Alert** name and mark in a manner that is likely to cause confusion; or to cause mistake; or to deceive as to the affiliation,

connection, or association of such person with another person; or as to the origin, sponsorship; or approval of his or her goods, services; or commercial activities by another person.

**ANSWER:** BRK denies the allegations of paragraph 109.

110. BRK has thus violated Lanham Act § 43(a), 15 U.S.C. § 1125(a).

**ANSWER:** BRK denies the allegations of paragraph 110.

111. BRK's acts were, and continue to be, knowing and willful.

**ANSWER:** BRK denies the allegations of paragraph 111.

112. As a direct and proximate result of these violations, BRK has profited and Honeywell, in its capacity as licensee and standing in the shoes of First Alert Trust, has suffered and will suffer damages.

**ANSWER:** BRK denies the allegations of paragraph 112.

113. As a direct and proximate result of BRK's conduct, Honeywell, in its capacity as licensee and standing in the shoes of First Alert Trust, has been and will continue to be substantially and irreparably harmed, including by damage to the goodwill associated with the **First Alert Professional** mark.

**ANSWER:** BRK denies the allegations of paragraph 113.

114. Unless preliminarily and permanently enjoined by the Court, BRK will continue to use and infringe the marks in question. This threat of future injury requires injunctive relief to prevent BRK's continued use of the **First Alert** mark on and in connection with Professional Products or Intrusion Products.

**ANSWER:** BRK denies the allegations of paragraph 114.

**Count IV: Illinois Uniform Deceptive Trade Practices Act**

115. Honeywell incorporates the foregoing factual allegations by reference.

**ANSWER:** BRK incorporates its foregoing answers by reference.

116. The License Agreement provides that Illinois law governs the relationship between First Alert Trust, Honeywell, and BRK. License Agreement ¶ 9.13.

**ANSWER:** The allegations of paragraph 116 purport to characterize the terms of the License Agreement and BRK denies any allegation inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 116.

117. First Alert Trust owned and registered the **First Alert** and **First Alert Professional** marks, which are trademarks within the meaning of 815 ILCS 510/1 § 1(7).

**ANSWER:** The allegations of paragraph 117 purport to characterize the License Agreement and/or the Settlement Agreement and BRK denies the allegations to the extent they are inconsistent with the terms of the License Agreement and/or the Settlement Agreement. BRK denies any remaining allegation of paragraph 117.

118. First Alert Trust granted BRK a limited license to use the **First Alert** mark on and in connection with products except for Professional Products and Intrusion Products.

**ANSWER:** The allegations of paragraph 118 purport to characterize terms of the License Agreement and BRK denies any allegations inconsistent with the terms of the License Agreement. BRK denies any remaining allegation of paragraph 118.

119. Honeywell has the exclusive right to use the **First Alert Professional** mark on and in connection with Professional Products and Intrusion Products.

**ANSWER:** BRK denies the allegations of paragraph 119.

120. BRK has, in the course of its business and without the consent of Honeywell or First Alert Trust, engaged in conduct that causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; represents that goods or services have sponsorship, or approval, that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; or engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

**ANSWER:** BRK denies the allegations of paragraph 120.

121. BRK has therefore engaged in a deceptive trade practice, under 815 ILCS 510/2(a).

**ANSWER:** BRK has therefore engaged in a deceptive trade practice, under 815 ILCS 510/2(a).

122. BRK's acts were, and continue to be, knowing and willful.

**ANSWER:** BRK denies the allegations of paragraph 122.

123. As a direct and proximate result of these violations, BRK has profited and Honeywell, in its capacity as licensee and standing in the shoes of First Alert Trust, has suffered and will suffer damages.

**ANSWER:** BRK denies the allegations of paragraph 123.

124. As a direct and proximate result of BRK's conduct, Honeywell, in its capacity as licensee and standing in the shoes of First Alert Trust, has been and will continue to be substantially and irreparably harmed, including by damage to the goodwill associated with the **First Alert Professional** mark.

**ANSWER:** BRK denies the allegations of paragraph 124.

125. Unless preliminarily and permanently enjoined by the Court, BRK will continue to use and infringe the marks in question. This threat of future injury to Honeywell and First Alert Trust requires injunctive relief to prevent BRK's continued use of the **First Alert** mark on and in connection with Professional Products or Intrusion Products.

**ANSWER:** BRK denies the allegations of paragraph 125.

## AFFIRMATIVE DEFENSE

In further response to the Amended Complaint, BRK alleges the following affirmative defenses:

### First Affirmative Defense
### (Failure to State a Claim)

1. The Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense
### (*Res Judicata*)

1. In accordance with the Settlement Agreement, the lawsuit Honeywell filed in 2005 against BRK was dismissed with prejudice.

2. The claims of the 2005 lawsuit included allegations that BRK was using or planning to use the **First Alert** mark on smoke and carbon monoxide alarms with radio frequency transmitters ("RF Smoke / CO Products") that Honeywell alleged were "Professional Products". Honeywell further alleged that any such actual or planned uses infringed the trademark rights of Honeywell and reflected a breach of the License Agreement by BRK.

3. The dismissal with prejudice of the 2005 lawsuit is *res judicata* and precludes the relitigation of claims that were, or could have been, made in that case including claims relating to BRK's alleged breach of the License Agreement.

4. To the extent that Honeywell pursues under Count I in the instant action (alleged breach by BRK of License Agreement) any claim that Honeywell made, or could have made, in the 2005 lawsuit, the current claim is precluded by *res judicata*.

**Third Affirmative Defense**
**(Other Affirmative Matters)**

1. Honeywell's claims in the instant Amended Complaint may be avoided in whole or in part because of the Settlement Agreement which provides in relevant part that:

> Honeywell agrees to voluntarily and promptly dismiss the Litigation with prejudice, each party to bear its own costs, and agrees to take no further legal action with regard to and consents to BRK's manufacture, importing, marketing, offering for sale or sale of the Current RF Smoke/CO Products or any change in SKU to the Current RF Smoke/CO Products, any addition of SKU to the Current RF Smoke/CO Products, or modification of the Current RF Smoke/CO Products, so long as said change, addition or modification does not render said product one that is intended or designed to be professionally installed and professionally monitored; all in consideration of BRK's performance under this Agreement. (Emphasis supplied).

2. The BRK products as to which Honeywell complains include RF Smoke / CO Products, and changes, additions and modifications thereof. Those products are not intended or designed to be professionally installed and professionally monitored and are not in violation of the Settlement Agreement.

**Fourth Affirmative Defense**
**(Other Affirmative Matters)**

1. Honeywell's claims in the instant Amended Complaint as to BRK's products that Honeywell contends are "intrusion products" in violation of the Settlement Agreement may be avoided in whole or in part because of paragraphs 3(a) and 3(b) of the Settlement Agreement.

2. The BRK products of which Honeywell complains include products that are not in violation of the Settlement Agreement because:

a) They are products that were "available for sale on the Effective Date [of the Settlement Agreement] (or any change in SKU for, addition of SKU for, or modification of said product that does not expand the functionality of the product"); or

b) They are "environmental devices".

**Fifth Affirmative Defense**
**(Estoppel)**

1. At various times on or before February 2, 2007 through October 2, 2015, Honeywell executed and provided to BRK documents entitled "Letter of Direction". Each Letter of Direction reflected Honeywell's status, together with that of BRK or its predecessor in interest ("THL-FA IP Corp.") as to the ownership of the "Trust" (the First Alert Trust dated July 31, 1992). The Letters of Direction directed US Bank Corporate Trust Services as Trustee of the Trust to execute Powers of Attorney for the application of the trademark, **First Alert**, for the benefit of BRK or THL-FA IP, Corp. as to various products including, but not limited to:

personal safety alarms
personal panic alarms
thermostats
proximity sensors for tracking valuables
security doors
security fencing
window guards
motion sensing light socket
personal security devices in the nature of portable audible alarms to be carried by an individual

smoke alarms
digital video records
video cameras
wired video systems
wireless video systems
cameras
DVRs
parking sensors
pool intrusion alarms
ultrasonic sensors for indoor and outdoor use
acoustic alarms
fire alarms
burglar alarms
radios

2. The consent of Honeywell as reflected by the Letters of Direction was reasonably relied upon by BRK in the conduct of its business including its use of the **First Alert** trademark on or in connection with its products.

3. The consent of Honeywell as reflected by the Letters of Direction is inconsistent with claims in the Amended Complaint that various products of BRK and the use of the **First Alert** trademark on or in connection with the products allegedly infringes the trademark rights of Honeywell, causes a breach of the Settlement Agreement or License Agreement, or otherwise violate federal or state laws.

4. The inconsistency of Honeywell's conduct is to the detriment of and will prejudice BRK.

5. Honeywell's claims are barred in whole or in part by the doctrine of estoppel.

**Sixth Affirmative Defense**
**(Acquiescence)**

1. BRK incorporates by reference paragraphs 1 through 4 of its Fifth Affirmative Defense.

2. Honeywell conveyed its implied consent to BRK as to BRK's use of the **First Alert** trademark on or in connection with products of BRK that are now the subject of Honeywell's Complaint.

3. Honeywell's claims are barred in whole or in part by the doctrine of acquiescence.

**Seventh Affirmative Defense**
**(Waiver)**

1. BRK incorporates by reference paragraphs 1 through 4 of its Fifth Affirmative Defense.

2. The actions of Honeywell were voluntary and intentional relinquishments of purported rights it has now alleged in its Amended Complaint as to the License and Settlement Agreements.

3. Honeywell's claims are barred in whole or in part by the doctrine of waiver.

**Eighth Affirmative Defense**
**(Laches)**

1. BRK incorporates by reference paragraphs 1 through 4 of its Fifth Affirmative Defense.

2. At various times since the 2005 Settlement Agreement and prior to its Complaint, Honeywell knew, or reasonably should have known, of uses of the **First Alert** trademark by BRK and other conduct of BRK of which Honeywell now complains.

3. Honeywell's delays in taking action as to its alleged rights against BRK reflect an unreasonable lack of diligence.

4. Prior to Honeywell's taking action to enforce its alleged rights as charged in the Complaint, BRK continued to produce and sell products and use the **First Alert** trademark. BRK has been and will be prejudiced by Honeywell's delays in asserting its alleged rights as to the claims made in its Complaint.

5. Honeywell's claims are barred in whole or in part by the doctrine of laches.

WHEREFORE, BRK requests that: Honeywell's prayers for relief in its Complaint be denied; the Complaint be dismissed with prejudice, judgment be entered in favor of BRK and against Honeywell; BRK be awarded its costs, fees and expenses, including attorneys' fees, pursuant to the License and Settlement Agreements and applicable law; and such other relief as the Court deems appropriate.

Respectfully submitted,

Dated: October 21, 2016

**COZEN O'CONNOR**

/s/ Jack J. Carriglio

Jack J. Carriglio
James G. Argionis
Jeffrey B. Greenspan
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7900
jcarriglio@cozen.com
jargionis@cozen.com
jgreenspan@cozen.com

Cozen O'Connor
James H. Heller *(Pro Hac Vice)*
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2189
jimheller@cozen.com

Attorneys for Defendant,
BRK Brands, Inc.

## CERTIFICATE OF SERVICE

I, Jack J. Carriglio, an attorney, hereby certify that on October 21, 2016, I caused to be electronically filed a true and correct copy of the foregoing **DEFENDANT, BRK BRANDS, INC.'S ANSWERS AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT** with the Clerk of the Court using CM/ECF, which sent electronic notification of such filing to all Counsel of Record.

*/s/ Jack J. Carriglio*
Jack J. Carriglio